```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

UNITED STATES OF AMERICA

                -against-                  MEMORANDUM & ORDER

ANTHONY ROMANELLO, LUAN BEXHETI, and       22-CR-194(EK)
JOSEPH CELSO,

                Defendants.

-----------------------------------x
```

ERIC KOMITEE, United States District Judge:

Defendants Anthony Romanello and Joseph Celso await trial on charges of extortionate collection of credit, conspiracy, and obstruction of justice. *See* Indictment 1-2, ECF No. 1. Trial is scheduled to begin November 29, 2023. The Government filed motions *in limine* on October 6 and November 7, 2023. *See* ECF Nos. 69 and 84. Romanello filed motions *in limine* on October 6, 2023. *See* ECF No. 67. The Court held oral argument on the motions on October 27, November 6, and November 14, 2023. *See* ECF Nos. 89, 101 (transcripts of the November conferences). The motions are decided as follows:

**The Government's Motion to Admit Romanello and Celso's Own Statements Against Them (ECF No. 69):** The motion is granted, substantially for the reasons stated by the government in its motion and because neither defendant opposes it. ECF No. 69. The statements are admissible non-hearsay because they are

"offered against an opposing party and . . . [were] made by the party in an individual or representative capacity" under Federal Rule of Evidence 801(d)(2)(A). The parties have confirmed that these statements present no issues under *Bruton v. United States*, 391 U.S. 123 (1968).

**The Government's Motion to Preclude Evidence or Argument Concerning Possible Punishment and Collateral Consequences (ECF No. 69)**: The motion is granted, substantially for the reasons stated by the government in its motion and because neither defendant opposes it. "[T]he jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975).

**The Government's Motion to Preclude Evidence or Argument Suggesting Selective Prosecution or Impugning the Government's Investigatory Conduct (ECF No. 69)**: The motion is granted, substantially for the reasons stated by the government in its motion. The government's motives, when challenged, are a question for the Court and are not properly before the jury. *See, e.g., United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (the propriety of a prosecution is "far beyond the scope of legitimate issues in a criminal trial").

**The Government's Motion to Allow Intercepted Phone Communications to be Authenticated Through the Testimony of a**

2

**Witness Familiar with the Speaker's Voice (ECF No. 69)**: Decision is reserved until the government lays a foundation at trial for the authentication of the intercepted recordings and the identification of the speakers.  The government proposes to authenticate the intercepted communications through testimony by a member of the New York Police Department's Technical Assistance Response Unit as to the manner in which the calls were collected.  ECF No. 69, at 24 n.12.  The government proposes to then call one or more witnesses who will testify that they recognize the voices of the speakers and can identify the speakers by name.  ECF No. 101, Transcript: November 14 Conference ("Nov. 14 Transcript"), 14:19-25.  So long as both elements are satisfied — authenticity and a basis for identification — the evidence will be admitted.  *See* Fed. R. Evid. 901.  Such testimony must simply allow "a reasonable juror [to] find in favor of authenticity or identification."  *United States v. Dhinsa*, 243 F.3d 635, 659 (2d Cir. 2001) (Rule 901 "does not erect a particularly high hurdle").

**The Government's Motion to Admit Certain Business and Public Records (ECF No. 69)**: The motion is granted in part, substantially for the reasons stated by the government in its motion.  ECF No. 69.  The following business and public records are admitted, as further specified by the government in ECF No. 69: Yaana subscriber and toll records; Verizon subscriber and

3

toll records; and Chase Bank records of certain Victims' bank accounts.  These records are self-authenticating under Rule 902 because they are either (1) certified domestic records of a regularly conducted activity, *see* Fed. R. Evid. 902(11), or (2) certified records generated by an electronic process, *see* Fed. R. Evid. 902(13). The government has provided certifications of those records to the Court, marked as government Exhibits 2-6. ECF No. 68, Exhs. 2-6.  Each record is admissible over a hearsay objection under Rule 803(6).  *See* Rule 803(6)(A)-(D).  The government further seeks a ruling that AT&T subscriber and toll records, Rite Aid Pharmacy video surveillance footage, and New York State Department of Motor Vehicle records are admissible. *See* ECF No. 69 at 37-38.  However, the government has not provided the Court with certifications for those records.

**The Government's Motion to Preclude the Use of Agent Reports of Witness Interviews, Rather Than the Witness's Own Statements, to Impeach (ECF No. 69):** The motion is granted, substantially for the reasons stated by the government in its motion.  ECF No. 69.  A witness may only be impeached by his or her own statements, *see* Fed. R. Evid. 613(b), not notes made by other parties about what they said, unless the witness has adopted or approved those notes.  *See, e.g., United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) ("[T]he written statement of [an] FBI agent was not attributable to [the

4

interviewee]."); *see also United States v. Nathan*, 816 F.2d 230, 236 (6th Cir. 1987) (specifically with regard to reports on Form 302, "it would be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations"). Even if an agent accurately reported such statements, they might still be excluded as hearsay, because the witness was not "under penalty of perjury at a trial, hearing, or other proceeding or in a deposition" when giving the statement.  Fed. R. Evid. 801(d)(1)(A).

**The Government's Motion to Admit Co-Conspirator Statements Against Both Defendants (ECF No. 69)**: The motion is conditionally granted, largely for the reasons stated by the government in its motion and as discussed on the record.  ECF No. 69.  The statements will be admitted on the condition that the government establish, during the course of trial, "that a conspiracy existed, that the defendant and the declarant[s] were members, and that the statements were made during the course of and in furtherance of the conspiracy."  *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993); *see* Fed. R. Evid. 801(d)(2)(E).

The Second Circuit has authorized district courts to admit "statements proffered as co-conspirator statements . . .

5

on a conditional basis, subject to the later submission of the necessary evidence" during the trial. *Tracy*, 12 F.3d at 1199. "While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence." *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969).

The government has proffered that the statements it seeks to admit were all "made in furtherance of the same conspiracy[,] which was to collect the illegal gambling debt that was incurred by Tony and Eddie" — the two alleged victims of the charged extortion offense. Nov. 14 Transcript at 26:12-15. The government has further proffered that the speakers on the calls are Luan Bexheti and Robert Utnick, "the individuals with whom the bets were placed that [were] the source of th[e] debt" at issue. *Id.* at 26:19-22, 27:1-4. That debt, the Government has proffered, was created when the "victims lost $86,000 when they were gambling with Bexheti, Utnick, and Regan, and . . . was then collected by extortionate means by Romanello and Celso." *Id.* at 32:24-33:4. To satisfy the Second Circuit's requirement that the evidence at trial include "some independent corroborating evidence of the defendant's participation in the

6

conspiracy" other than the co-conspirator statements themselves, *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1998), the government has indicated that it will introduce a video showing Romanello and Celso meeting the victims in a restaurant in order to collect the debt, and that the video will show that Romanello punched one of the victims there.  Nov. 14 Transcript at 32:5-13.

Bexheti and Utnick's statements, as recorded over phone calls and text messages and as described in the Government's memorandum, ECF No. 69 at 16-17, will therefore be admitted as co-conspirator statements made in furtherance of the conspiracy, conditioned upon the Government's introduction at trial of the evidence it has proffered to the Court.

**The Government's Motion to Admit Bexheti's Statements Against Penal Interest (ECF No. 69)**: The motion is granted in part, substantially for the reasons stated by the government in its motion, contingent on one redaction discussed at the November 14 conference.  Nov. 14 Transcript 25:15-22.  The specific statements admitted under this order are Bexheti's statements as described in the Government's memorandum: on a recorded phone call, Bexheti "explains that his 'boss' . . . told him to 'shut the phone' 'most of the day' because he is 'getting a hundred thousand phone calls' concerning 'some f--king Albanian guy' who 'went out of line' and 'they f--king

7

smacked [] around his own restaurant.'" ECF No. 69 at 20. Bexheti continues that "Rom is Tony's right had guy" and recounts the allegedly extortionate encounter: "So my boss, fucking Rom is 80 years old. Ummm so Rom says you what? Bam, bam, and then my boss grabs him, bam, boom, and guy starts screaming . . . I wasn't there, but ah, *I'm the root of, uh, of all evil. It's my situation.*" ECF No. 84, at 3 (citing Government Exhibit 425: Call 2182) (emphasis added).

Bexheti's statements are admissible under Rule 804(b)(3) as statements against the penal interest of the declarant. *See, e.g., United States v. Wexler*, 522 F.3d 194, 202 (2d Cir. 2008). The statements recount a single incident: Bexheti says they were receiving numerous phone calls about a man who "went out of line" and who Romanello and Bexheti's "boss" then assaulted in the man's own restaurant. ECF No. 69 at 20. Bexheti then says that the assault, and indeed the entire situation, is Bexheti's own fault: "I'm the root of . . . all evil. It's my situation." ECF No. 84 at 3.

Rule 804(b)(3) "permits the admission of a statement against an unavailable declarant's penal interest if the statement, when made, had so great a tendency to expose the declarant to criminal liability that a reasonable person in his position would have made the statement only if he believed it to be true," and "corroborating circumstances indicat[e] both the

8

declarant's trustworthiness and the truth of the statement." *United States v. Dupree*, 870 F.3d 62, 80 (2d Cir. 2017).

Here, "a reasonable person in the declarant's shoes would have perceived the statement as detrimental to his or her own penal interest in light of all the surrounding circumstances." *Id*. Bexheti's statement is reasonably interpreted as an admission that he was at "the root" of a conspiracy to create and then collect an illegal gambling debt — and the indictment in this case in fact charged Bexheti with exactly that crime: it charged that he "participate[d] in the use of extortionate means to collect one or more extensions of credit." Indictment, ECF 1 at 1. Bexheti's statement "need not have been sufficient, standing alone, to convict [him] of any crime, so long as it would have been probative in a criminal case against him," which it would have been here. *Dupree*, 870 F.3d at 80.

Finally, the video of the altercation at the restaurant presents evidence corroborating Bexheti's description of the incident, which creates "a strong inference of trustworthiness and truth." *Id*. at 81.

In response to a request from Romanello's counsel, the government has agreed to excise these three words from the recording and transcript: "So my boss . . ." Nov. 14 Transcript 25:15-22.

9

**The Government's Motion to Exclude Additional Portions of the Defendants' Statements if Offered by the Defendants (ECF No. 69):** Decision is reserved. As discussed above, the government intends to introduce certain out-of-court co-conspirator statements and statements against penal interest. The government has moved to preclude the defendants from introducing additional statements from those same conversations. It is true that the hearsay exceptions and exclusions operate asymmetrically, *see, e.g.,* Fed. R. Evid. 801(d)(2) (a coconspirators' statements may only be admitted when "offered against an opposing party"), but additional statements offered by the defendants may be admissible under Rule 106. *See Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012) (Rule 106 "requir[es] generally that adversaries be allowed to prevent omissions that render matters in evidence misleading"). The defendants will inquire with the Court prior to proceeding to offer or refer to any such statements.

**The Government's Motion to Admit Evidence of Defendants' Reputation and the Reputation of Co-Conspirators (ECF No. 69):** Decision is reserved pending discussion with the parties on November 28, 2023.

**The Government's Motion to Admit Evidence of the Defendants' Involvement in Illegal Gambling (ECF No. 84):** The motion is granted, substantially for the reasons stated by the

10

government in its motion. ECF No. 84. Romanello plans to defend the charges by arguing that he was not present at the restaurant in question "as an enforcer for the organization, but because he's a personal friend of the debtor and [Michael] Regan," the head of the gambling organization. Nov. 6 Transcript at 27:7-15; *see also id. at* 39:18 (Romanello's counsel argues that Romanello was present only as an "[i]ntermediary and friend"). To meet this defense, the government seeks to introduce evidence that both defendants were previously involved in illegal gambling. This evidence, the government argues, will tend to prove "knowledge" under Rule 404(b)(2) — specifically, to prove that the defendants knew that the "debt at issue here could not be, for example . . . enforced in court, or . . . sold to a debt collection agency and that it had to be actually enforced" through the allegedly extortionate methods employed here. Nov. 14 Transcript at 40:8-21.

Therefore, evidence that Romanello took "a bet as a bookie 14 years ago," Nov. 14 Transcript at 41:2-10, and that a victim "placed bets with [] Celso . . . for about six or seven years beginning in and around 2012 or 2013," ECF No. 86 at 5, is admitted under Rule 404(b) for the purpose of attempting to prove the defendants' knowledge, intent, and absence of mistake. *See* Fed. R. Evid. 404(b)(2). In effect, the government seeks to use evidence of defendants' prior involvement in illegal

11

gambling operations to show that the defendants knew how illegal gambling organizations function and collect their debts, and thereby would have understood the potential effects of their conduct when they allegedly sought to extort the payment of an illegal gambling debt. *See United States v. Lyle*, 919 F.3d 716, 729 (2d Cir. 2019) (evidence of prior bad acts is admissible to show knowledge and intent when "knowledge and intent [are] at issue.").

**Romanello's Motion to Exclude the Testimony of Proposed Expert D.I. John Carillo (ECF No. 67):** Romanello's motion is granted in part and denied in part. The expert's proposed testimony regarding the Mafia (or "La Cosa Nostra") is excluded under Rule 403, Fed. R. Evid. 403, and the Government will "limit [his testimony] so that he doesn't use the word enforcer." Nov. 14 Transcript at 60:7-8. However, the expert may testify regarding terms of art used in illegal gambling and may explain the general operations and structure of illegal gambling organizatins. That testimony will assist the jury in understanding the "structure, hierarchy . . . and the functioning of illegal gambling operations," as well as the specialized terminology used by such operations. *United States v. Dey*, 409 F.App'x 372, 374 (2d Cir. 2010) (upholding admission of D.I. Carillo's testimony on "the structure, hierarchy, rules, and conduct of organized crime, organize crime terminology and

12

code language; and the functioning of illegal gambling operations" as "subjects on which an officer expert may appropriately testify."); *see also United States v. Castelle*, 836 F. App'x 43, 45 (2d Cir. 2020). Defendants may request a limiting instruction regarding the purpose of the expert's testimony, as discussed as the November 14 conference.

**The Government's Motion to Preclude Cross-Examination of Law Enforcement Witnesses Regarding the Subjects Set Forth in its November 6, 2023, Letter (ECF No. 87):** The government moves to preclude cross-examination of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding Internal Affairs Bureau (IAB) charges and suits filed against ▮▮▮▮▮▮▮▮ in New York State Supreme Court, the Southern District of New York, and the Eastern District of New York. ECF No. 87 at 1-2. The motions are granted in part, substantially for the reasons stated by the government in its motion. ECF No. 87. The Court has reviewed the information set forth in the government's November 6 letter and finds that, with one possible exception, "the conduct is not probative of truthfulness." *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002); *see* Fed. R. Evid. 608(b). However, cross-examination of ▮▮▮▮▮▮▮▮ will be allowed on the subject of one IAB charge — namely, that he made "computer inquiries unrelated to official NYPD business on a NYPD computer." ECF No. 87 at 2. ▮▮▮▮▮▮▮▮ conduct may be

13

probative of his credibility, honesty, or integrity, because the system would likely have required him to falsely represent, when logging in, that he was accessing it for official business purposes. Cross-examination on that specific subject will thus be allowed, absent a further showing by the Government — perhaps by reference to the specific allegations or IAB findings — that the conduct did not involve dishonesty.

\* \* \* \* \*

The Clerk of Court is directed to terminate ECF Nos. 67, 68, and 69.

       SO ORDERED.

                                        /s/ Eric Komitee
                                        ERIC KOMITEE
                                        United States District Judge

Dated:    November 27, 2023
            Brooklyn, New York