UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

UNITED STATES OF AMERICA

                -against-             **MEMORANDUM & ORDER**

ANTHONY ROMANELLO and JOSEPH CELSO,       22-CR-194(EK)

                Defendants.

-----------------------------------x

ERIC KOMITEE, United States District Judge:

      Defendants Anthony Romanello and Joseph Celso have moved for a new trial based on the government's belated production of four transcripts of telephone calls recorded pursuant to a court-authorized Title III wiretap.  Because the information in those transcripts was not material to the preparation of the defense, these motions are denied.

      The government will be directed to describe its process for complying with *Brady* and *Giglio* in this case, and any go-forward changes that will be made in response to the discovery lapse here, separately.

## I.  Facts

      This opinion assumes familiarity with the broader facts of the case and sets forth only selected facts relevant to this opinion.

      Defendants Romanello and Celso were charged with extortionate collection of credit and conspiracy to engage in

the same; Celso was additionally charged with obstruction of justice.  Following trial, the jury found Romanello guilty on both counts he faced, and Celso guilty of the conspiracy to collect via extortionate means.

## A.    Trial Evidence

The charges centered on interactions between the defendants and a restaurant owner named Shuqeri "Bruno" Selimaj. Selimaj's nephew Toni owed $6,000 as a result of sports betting; the nephew's brother-in-law owed $80,000.  Trial Tr. 304:16-19. When they failed to pay, the evidence showed, Romanello was brought in to collect the debt.  Ultimately, Celso actually did collect the debt through Selimaj's brother, Shemsi "Nino" Selimaj.  *Id.* 257:13-261:8.

The government's evidence showed that Romanello visited Bruno Selimaj at his restaurant on the west side of Manhattan three times.  *Id.* 71; 104; 108.  Each time, Romanello and Selimaj went to a private room to talk.  *Id.*  The first time, Romanello yelled at Selimaj: "I need my $86,000, I need it now."  *Id.* 71:21.  The second visit was much the same, except that Romanello's tone of voice "was getting higher than the first time, like screaming that I need my $86,000, I don't want to hear, I need my money."  *Id.* 106:2-5.

On the third visit, Romanello showed up with several associates, including his son George and Celso.  *Id.* 107:25-

108:7.  Again, Selimaj and Romanello went to talk in a private room.  *Id.* 108:8-13.  While in the room, Romanello "was still screaming, yelling: I want all my phone, I want $86,000, and I don't want to hear."  *Id.* 109:1-7.  Selimaj offered to pay the $6,000 that his nephew Toni owed, but not the remaining $80,000 — but Romanello "just didn't want to take the answer," and continued "raising his voice, screaming" that he wanted "all my money."  *Id.* 109:1-20.  Then, Romanello punched Selimaj; that assault was recorded on video.  *Id.* 111:1-6.  Selimaj testified that he pointed out the video cameras that recorded the incident, which prompted Romanello and his associates to leave the restaurant.  *Id.* 112:8-16.

The defense argued that the punch was not made in connection with the effort to collect the gambling debts; rather, it was in response to an insult.  Romanello's counsel suggested, via his cross-examination of Selimaj, that Selimaj had told Romanello "that he was a washed up old Italian," and that "he didn't have the balls to punch" him.  *Id.* 177:2-24.

Selimaj denied this; he testified instead that when he told Romanello "I'm willing to pay $6,000, but I'm not willing to pay $86,000," that Romanello kept "saying I would like to punch you."  *Id.* 110:17-23.  Selimaj testified that he told Romanello "you have no guts to punch me," and that a "[f]ew seconds later he just punched me."  *Id.* 110:24-111:2.  Defense

counsel also asked Selimaj if he was "an Albanian tough guy" and whether members of organized crime were "afraid of" him. *Id.* 185:13-18.

## B.  Post-Trial Production

Following trial, the government produced transcripts of certain recorded conversations to the defense.  In the accompanying cover letter, the government advised that it intended to provide those materials to the Probation Department to assist in the preparation of the defendants' Presentence Investigation Reports "and to rely on [the materials] at sentencing."  Romanello's Feb. 3 Ltr., ECF No. 143, at 1.

The materials consist of transcripts of four telephone calls recorded via Title III wiretap.  Gov't Feb. 12 Ltr., ECF No. 150, at 1.  Among those materials is the transcript of a call between an individual named Abduraman "Diamond" Iseni — referred to in this order as "DI" — and two unnamed individuals. The defendants' motion does not address the contents of the other recorded calls, focusing exclusively on the transcript filed at ECF No. 150-1.

In that call, DI says he received a call during which he was told that "the Italian hit Selimaj, they beat him up at Steakhouse."  Call Tr., ECF No. 150-1, at 1.  DI tells his counterpart that in the course of that interaction, Selimaj

"started yelling at the old man, saying I am Albanian mafia and so the old man hit him."  *Id.*

The prosecution team advised that they received the transcript at issue among other transcripts, which were made in the course of "an unrelated investigation in the Southern District of New York," "in 2022, but at the time no exculpatory value was apparent."  Gov't Feb. 12 Ltr., at 1.

## II.  Analysis

"An appellant seeking a new trial on the basis of an alleged Brady violation bears the burden of demonstrating both that the Government suppressed exculpatory information and that this information was material."  *United States v. Brunshtein*, 344 F.3d 91, 101 (2d Cir. 2003).[1]

## A.  Was the Information Suppressed?

Romanello and Celso were both present in Bruno Selimaj's restaurant when, according to DI, Selimaj "started to scream and he told the man that he is an Albanian mafia and the old man hit him."  Call Tr., at 1; *see also* Gov't Exh. 313-B.  And it is settled law that "[e]vidence is not suppressed if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

evidence." *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (quoting *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)).

Romanello's counsel has invoked Romanello's hearing loss and proffered that Romanello did not hear this statement. Apr. 15 Oral Arg. Tr., ECF No. 174, at 37:22-38:1.  This, notwithstanding that Selimaj was said to have been "yelling at the old man," Call Tr., at 1, and the video shows the two standing no more than a couple of feet apart.  Counsel for Celso estimates that his client was located approximately twelve feet away.  Apr. 15 Oral Arg. Tr., at 23:18-20.  He has proffered no such denial on his client's behalf, apart from arguing that the video shows him "standing far enough away that logic and common sense dictate that he would have been out of earshot." Defendant's Brief, ECF 169, at 13.

In the end, however, I do not need to resolve the question of whether Romanello was on notice about the statements, for the reasons that follow.

**B.   Was the Information Material?**

The defendants bear the burden of establishing that the evidence in question was material.  *United States v. Hunter*, 32 F.4th 22, 30-31 (2d Cir. 2022).  Evidence is material if it would have given rise to "a reasonable probability of altering the outcome" of the trial.  *United States v. Coppa*, 267 F.3d

132, 135 (2d Cir. 2001).  The adjective — reasonable — "is important."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Such a showing requires that the evidence satisfies one of three threshold criteria: (1) it "is admissible," (2) it "could lead to admissible evidence," or (3) it "would be an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise." *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002).

1.  <u>Probability of Altering the Trial's Outcome</u>

Given Romanello's assertion that he did not hear the statement Selimaj is said to have uttered, the information cannot be material on *Romanello's own* theory.

Romanello's theory of materiality is that the "screamed" statement constituted an alternative motivation for the punch.  Romanello claims he punched Selimaj because Selimaj insulted him, not because Selimaj had refused to pay his family members' debts.  He writes:

> The exculpatory value of the recording is obvious
> . . . it recites that defendant [Romanello] hit
> Selimaj immediately after Selimaj told him he was
> Albanian mafia, corroborating that the one-punch
> assault was due to the insults and threats by Selimaj
> rather than because Mr. Romanello was trying to
> collect a gambling debt.

Romanello's Feb. 3 Ltr., at 2.

Putting aside the fact that "I am Albanian mafia" is not an insult, the obvious problem with Romanello's theory is

7

that a statement he did not hear cannot have motivated him to
act.

At oral argument on the *Brady* motion, a somewhat more
subtle theory of materiality emerged.  This theory emanates from
the court's decision *in limine* to admit testimony of Romanello's
mafia association at trial.  The basis for that determination
was the potential for Romanello's reputation to contribute to
the threat he was making.  *See* December 4 Order (citing *United
States v. Dennis*, 625 F.2d 782, 800 (8th Cir. 1980) ("If a man
makes vaguely menacing statements, aware that he is commonly
known as a violent man, then it is a reasonable inference that
he intends to instill fear."), and *United States v. Mulder*, 273
F.3d 91, 103 (2d Cir. 2001) (a bad reputation "frequently
conveys a tacit threat of violence")).  Celso's counsel
suggested at oral argument that the "I am Albanian mafia"
comment might have been relevant to rebut this suggestion:
another mafioso would be less intimidated by a mafia-connected
debt-collector than the average debtor would.

There are, however, at least two problems with this
theory.  The first is that the test of extortionate means under
18 U.S.C. § 894 does not inquire into the particular victim's
subjective reaction.  The inquiry is directed at "the conduct of
the defendant, not the victim's individual state of mind."
*United States v. Natale*, 526 F.2d 1160, 1168 (2d Cir. 1975); *see*

*also United States v. Polizzi*, 801 F.2d 1543, 1548 (9th Cir. 1986) ("It is the nature of the actions of the person seeking to collect the indebtedness, not the mental state produced in the debtor, that is the focus of the inquiry for the jury."); Trial Tr. at 866:17-22 (court instructed the jury to assess "extortionate means" by reference to "the conduct of the defendant, not [] the state of mind of the victim").

The second problem with this theory is that the ostensible *Brady* material does not actually tend to establish Selimaj's membership in the Albanian — or any other — mafia. All DI reported is what Selimaj ostensibly screamed.  But DI was not in attendance, so he was not speaking from firsthand knowledge.  And he did not say who he heard this information from, let alone whether or not he believed it to be true (and on what basis he formed that belief).  This undercuts any claim of materiality.  *See United States v. Santos*, 486 F. App'x 133, 135 (2d Cir. 2012) (rejecting a *Brady* claim where, among other things, the newly discovered statement "consisted of rumors amounting to inadmissible hearsay").

Moreover, the defendants' obligation to show "a reasonable probability of altering the outcome" runs into other difficulties.  The evidence that Romanello and Celso were brought in to collect a debt was overwhelming.  And even if the punch — the motivation for which is at issue here — had never

9

been thrown *at all*, the evidence would still have been
sufficient to convict.

The statute under which Romanello and Celso were
convicted — Section 894 — does not require the actual use of
violence.  Instead, the government can demonstrate extortionate
collection by proving the *threatened use* of harm to persons or
property.  *See United States v. Sears*, 544 F.2d 585, 588 (2d
Cir. 1976) (affirming a conviction under Section 894 for threats
of violence, absent any actual violence); *see also* Trial Tr. at
864:11-867:2 (jury instructions on extortionate collection of
credit).  And the government adduced substantial evidence that
the defendants threatened Selimaj on multiple occasions, not
just the evening of the video-recorded assault.  Just by way of
example: the government adduced testimony that Romanello visited
Selimaj weeks before the punch and proceeded to "yell" at him
that he "need[ed]" the $86,000 at issue.  Trial Tr. at 71:20-24.
In this visit, Romanello stated (among other things) that one
"Tough Tony" — whom Selimaj also knew to be a member of the
mafia — "said hello" and would "come over to visit" with
Selimaj.  *Id*. at 72:20-73:2.[2]

---

[2] Likewise, as to Celso, Nino Selimaj testified to his understanding
that the money was owed in particular to "Joe [Celso] and Rom."  Trial Tr. at
256:21-24.  The video recording showed that after Romanello punched Bruno,
Celso moved quickly to join Romanello and others, surrounding Bruno.  *See*
Gov't Exh. 313-B; *see also* Trial Tr. at 130:1-3 (Selimaj testifying that
"[t]hey surround me, all around, like, four sides.").  After Bruno filed a

2.    The *Gil* Factors

In any event, the defendants have not carried their burden of demonstrating that any of the *Gil* factors is satisfied.

*Admissibility*.  The defense has not shown that the evidence at issue would have been admissible.  DI cannot have testified to the alleged statement because he was not present at its making.  And he did not indicate, in the recorded calls, how he learned the substance of what he reported, other than to say he'd heard it from "some people from jail," "some . . . really big ones," and "other Italians."  Call Tr., at 1.  This is plainly insufficient to overcome a hearsay objection.

*Discovery of Admissible Evidence*.  The defendants have not indicated how the statement might have led them to admissible evidence.  Among other things, they have been unable to interview DI, despite having had more than ten weeks since the initial disclosure.[3]

---

police report concerning the incident at his restaurant, Celso told Nino that Bruno "better drop the charges" and "withdraw the police report," "otherwise it's going to be ugly."  Trial Tr. at 253:18-22.  And the evidence showed that Celso ultimately did collect the $86,000 debt from Nino Selimaj in a series of cash payments.  *Id.* at 256:16-261:11.

[3] Romanello's counsel indicated on February 23 that he would require "45-60 days to get the necessary approvals and then to visit and interview" DI.  *See* Feb. 23 Def. Ltr., ECF No. 154, at 3.  The court adjourned sentencing by five weeks to allow defense counsel to pursue that investigation fully.  *See* February 26, 2024 Order.  In the end, defense counsel indicated that DI would speak to them only pursuant to a court order.  Apr. 15 Oral Arg. Tr., at 18:7-19.

*Discipline on Cross*.  Lastly, it remains unclear how the information could have been used to "discipline" Selimaj on cross-examination.  Romanello's counsel did ask Selimaj if he was an "Albanian tough guy," which is at least adjacent to the question of whether Selimaj had ties to the Albanian mafia. Trial Tr. at 185:13-18.  Selimaj said no.  *Id*.  Following the disclosure of the DI transcripts, the court asked the government to indicate if it had any basis to believe that Selimaj is a member or associate of an organized crime group.  The government responded on the record that it does not.  Feb. 21 Conf. Tr., ECF No. 160, at 19:2-4.  Taken as a whole, the DI line sheets would not have provided an effective basis for witness discipline on cross.

### III. Conclusion

For those reasons, the defendants' *Brady* motions for a new trial are denied.


SO ORDERED.


___/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:   April 29, 2024
         Brooklyn, New York